

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-930
Re: Constitutionality of H. B.
No. 456, 46th Legislature,
Regular Session

We received your letter of June 2, 1939, requesting our opinion as to whether House Bill No. 456, by the 46th Legislature, is constitutional. The same was enacted to be Article 7345d, Revised Civil Statutes, and the pertinent part thereof reads as follows:

"In all cases where property appearing on the tax rolls, whether rendered or unrendered, current or delinquent, appears to have been assessed at a valuation greater than that placed upon other property in such locality of similar value, or out of proportion to the taxable value of such property; or where by reason of the depreciation in the value of such property an adjustment of assessed value would be equitable and expedient; or where by reason of long delinquency, the accumulated delinquent taxes, with penalties, interest, and costs aggregate such amount as to make their collection inequitable or confiscatory, the Commissioners Court of the county in which such property is situated, upon the application of the owner thereof or his duly authorized agent, shall have the power to reopen and reconsider the original assessments. In all such cases, the Commissioners Court shall hear testimony from competent and disinterested witnesses, and may make such personal and independent investigation as may seem necessary and expedient. If, after such investigation it shall appear to the Commissioners Court that such assessments were discriminatory, or out of proportion to the taxable value of the property, or that by reason of the depreciation of value of same, or that the enforced collection of the accumulated delinquent taxes, penalties, interest, and

Hon. Geo. H. Sheppard, Page 2

costs would be inequitable or confiscatory, the Commissioners Court may, under its powers as a Board of Equalization, make such adjustments as to assessed values of such property as it may determine to be equitable and just. And any previous fixing of values of such property for the years involved shall not be 'res adjudicata' as to the particular case."

It seems more convenient for us to first discuss the constitutionality of the provisions of this bill which would permit commissioners courts to reduce assessed values of properties on which taxes have become delinquent when it is found that "by reason of the depreciation in the value of such property an adjustment of assessed value would be equitable and expedient" and when it appears that "by reason of long delinquency, the accumulated delinquent taxes, with penalties, interest, and costs aggregate such amount as to make their collection inequitable and confiscatory."

Article 3, Section 55, Constitution of Texas, as adopted in 1932, reads as follows:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years." (Underscoring ours)

Prior to 1932, said Section 55 of Article 3 did not contain the part which we have above underscored. After quoting such section of the Constitution as it existed prior to the 1932 Amendment, the Commission of Appeals in State vs. Pioneer Oil & Refining Co., 292 S. W. 869, opinion by Judge Nichels, said:

"We do not stop to consider whether a delinquent tax is an 'indebtedness' or 'obligation,' within the meaning of the language quoted, for that it is a 'liability' cannot be doubted. Olliver v. City of Houston, 93 Tex. 206, 54 S. W. 940, 943; City of Henrietta v. Eustis, 87 Tex. 14, 26 S. W. 619."

That the above constitutional provision inhibits the Legislature from releasing or extinguishing, or authorizing the extinguishing of any taxes due the State, or any county or defined subdivision thereof, or other municipal corporation therein, except those which have been due for at least ten years, is too plain to admit of argument. Furthermore the Constitution makes no exception in favor of those who would stand to profit by the act in question. Stripping the part of the statute which we are discussing down to what it actually is, it is simply an attempt to place in the hands of the various commissioners' courts the authority to release and extinguish delinquent State and county taxes. It would be just that and nothing more, to permit a commissioners' court to reduce an assessment made many years before, the fairness and legality of which is not questioned, on the ground that the owner has allowed his taxes to go delinquent for so long that they equal or nearly equal its value, or that the property had depreciated in value since the taxes became due and ought to have been paid.

Section 18 of Article 8, Constitution of Texas, requires the Legislature to "provide for equalizing, as near as may be, the valuation of all property subject to or rendered for taxation, (the county commissioners' court to constitute a board of equalization); and may also provide for the classification of all lands with reference to their value in the several counties."

Article 8, Section 10, of the State Constitution, says that "The Legislature shall have no power to release the inhabitants of, or property in, any county, city or town from the payment of taxes levied for State or county purposes, unless in case of great public calamity in any such county, city or town, when such release may be made by a vote of two-thirds of each House of the Legislature."

It has been held that the present industrial depression is not a "great public calamity" within the meaning of such provision. Jones vs. Williams, 45 S. W. (2d) 130.

These constitutional provisions were meant to encourage the timely payment of taxes. By Article 3, Section 55, and Article 8, Section 10, a man is told that just as certain as the Constitution stands he must pay his taxes. He is told that his neighbor will not gain anything over him by letting his taxes go delinquent. He is told by Article 8, Section 18, quoted above, and by Article 8, Section 1, which says that "taxation shall be equal and uniform," that he and his fellow man are to be treated alike in matters of

Hon. Geo. H. Sheppard, Page 4

taxation, that neither is entitled to any advantage over the other, and certainly that none should be acquired by delinquency.

Furthermore, to reduce an assessment, which was legally and fairly made, giving such reduction of assessment a retroactive effect, resulting in a man's assessment being lower and the taxes paid by him therefore proportionately less than others about him, and who had paid their taxes when the indebtedness became due, would be in violence to Section 3 of Article 1, of the Texas Constitution, providing that "all free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

That part of the statute providing for such reduction of assessment where it appears that enforced collection of accumulated delinquent taxes, penalties, interest and costs, would be inequitable and confiscatory, is inapplicable to current taxes. So far as that part of the statute is concerned which provides that an assessment may be reduced where the value of the property has depreciated, in so far as current taxes are concerned (and this would be equally applicable to delinquent taxes), we need hardly say more than quote from the opinion of Judge Critz, in Rowan Drilling Co. v. Sheppard, 87 S. W. (2d) 706, as follows:

"When we read the various tax provisions of our Constitution singly, and in the light of each other, we are convinced that by necessary implication, if not by direct language, it prohibits more than one valuation of property for ad valorem tax purposes for the same tax year. In this connection we call attention to the fact that the various tax provisions of our Constitution use the word 'valuation' in the singular. Also a holding that more than one valuation can be provided by law for the same tax year would bring about impossible situations in regard to many tax matters. In this connection we call attention to the fact that section 52 of article 3, of our Constitution permits bonds to be issued by any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described and defined within the state of Texas, etc., for certain purposes in any amount not to exceed one-fourth of the assessed valuation of the real property in such district or territory. It is clear to us that this provision of the Constitution demonstrates a direct constitutional intent not to allow more than one valuation. It undoubtedly demonstrates a constitutional implication not to do

Hon. Geo. H. Sheppard, Page 5

so. This is evident, for the reason that, if four valua-
tions are provided by law, we are left without a con-
stitutional guide to determine which valuation should
be taken for bonding purposes under this provision of
our Constitution."

The provisions of House Bill No. 456, for a reduction
of assessments where it appears that by reason of depreciation in
the value of the property or the enforced collection of the accumulate
delinquent taxes, penalties, interest and costs would be inequitable
or confiscatory, are clearly unconstitutional and void.

We come now to the other grounds provided in the bill for
the reduction of assessments. It is provided that "where property
. . . appears to have been assessed at a valuation greater than that
placed upon other property in such locality of similar value . . .
the commissioners' court . . . (upon application) shall have power
to reopen and reconsider the original assessments." It is then
provided that if "it shall appear that such assessments were dis-
criminatory . . . the commissioners' court may, under its powers as
a board of equalization, make such adjustments as to assessed values
of such property as it may determine to be equitable and just.".

Without attempting to enunciate rules as to what property,
the nature and location thereof, is to be used for comparison in
determining whether a given piece of property has been over-assessed,
we think the language above used can be fairly construed to mean
that a commissioners' court may review a prior assessment and reduce
the same where it is found that a particular piece of property has
been assessed so much higher than the other properties with which
it should have been kept in line as to be discriminatory and
threatening to bring about the collection of an unequal and uncon-
stitutional tax against the same.

The bill also provides for a reconsideration and adjust-
ment of a prior assessment when it appears that property was assessed
"out of proportion to the taxable value of such property." Article
8, Section 1, of our Constitution requires that "all property in this
State, whether owned by natural persons or corporations, other than
municipal, shall be taxed in proportion to its value, which shall be
ascertained as may be provided by law."

Article 8, Section 20, of the State Constitution, adopted
in 1937, provides that "no property of any kind in this State shall
ever be assessed for ad valorem taxes at a greater value than its
fair cash market value nor shall any board of equalization of any

597

governmental or political subdivision or taxing district within this State fix the value of any property for tax purposes at more than its fair cash market value." Even before the adoption of said Section 20, of Article 9, the word "value" as used in Article 8, Section 1, meant cash market value, where property had a market value. Phillips Petroleum Co. vs. Townsend, 63 Fed. (2d) 293; T. & P. Ry. Co. vs. El Paso, 85 S. W. (2d) 245, Supreme Court. We construe the term "taxable value," as used in Senate Bill 456, to mean fair cash market value. The statute in question therefore would authorize an adjustment of the assessment where it was out of proportion to the cash market value of the property, that is, where the assessed value exceeded the market value thereof.

Briefly, the bill proposes to authorize commissioners' courts to review and adjust (1) previous discriminatory over-assessments, and, (2) previous assessments in excess of cash market value. Discriminatory over-assessment and assessment in excess of value are both forbidden by the Constitution. The problems presented by this Act in respect to authorizing adjustments of previous discriminatory assessments and assessments in excess of value are so much the same that we will consider them together.

From the opinion of Judge Sharp, in State vs. Mallet Land and Cattle Co., 88 S. W. (2d) 471, we quote as follows:

"The rule has been repeatedly announced that, in the absence of fraud or illegality, the action of a board of equalization upon a particular assessment is final; and, furthermore, that such valuation will not be set aside merely upon a showing that the same is in fact excessive. If the board fairly and honestly endeavors to fix a fair and just valuation for taxing purposes, a mistake on its part, under such circumstances, is not subject to review by the courts. Texas & Pacific Ry. Co. v. City of El Paso (Tex.Sup.) 85 S.W. (2d) 245; Rowland v. City of Tyler (Tex. Com. App.) 5 S. W. (2d) 756; Druesdow v. Baker (Tex. Com. App.) 229 S. W. 493; Duck v. Peeler, 74 Tex. 268, 11 S. W. 1111; State v. Chicago, R. I. & G. Ry. Co. (Tex. Com. App.) 263 S. W. 249; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 38 S.Ct. 495, 62 L.Ed. 1154. However, the rule has been declared that if a board of equalization adopts a method that is illegal, arbitrary, or fundamentally wrong, the decision of the board may be attacked and set aside."

other cases use the language that "as a general rule, the decision of a board of equalization upon a particular assessment, in the absence of fraud or irregularity, is conclusive." Port Arthur Ind. Schl. Dist. vs. Baumer, 64 S. W. (2d) 412; Nederland Ind. Schl Dist. vs. Carter, 73 S. W. (2d) 935. When so used the words "final" and "conclusive" mean the same thing. The value of the property as fixed by the board of equalization is res adjudicata, subject only to being set aside for fraud or the adoption of a fundamentally wrong method of assessment.

Quite clearly, therefore, all assessments heretofore made, and which are not subject to being set aside for fraud or irregularity, are final and conclusive. In all such instances it has been determined that the assessments were neither discriminatory nor excessive, and such determinations are final and conclusive. The right of the State to the amount of its taxes as based upon such valuations has vested.

Article 1, Section 16, of the Texas Constitution, guarantees us that "no . . . retroactive law . . . shall be made." This provision is construed to forbid the enactment of a law, even a remedial one, which disturbs or impairs vested rights. 39 Tex. Jur. 53; 9 Tex. Jur. 527, 535. It is our opinion that the above constitutional provision, as well as Article 3, Section 55, would prohibit a commissioners' court, under the authority of said S. B. 456, from entertaining applications to reduce assessments which had been made and become final before the effective date of the Act.

As to the power of the Legislature to authorize commissioners' courts in the future to review and adjust assessments made after the effective date of the Act, different questions are presented. We cannot regard the correction of an assessment, so as to relieve a man of a burden placed upon him contrary to the Constitution, as being a second assessment, such as Judge Critz was talking about in Rowan Drilling Co. vs. Sheppard, supra. Assessments cannot be reduced to such a mathematical certainty that one-fourth of the assessed valuation can be irrevocably calculated to the penny. District courts quite frequently entertain suits which have the effect of reducing excessive valuations. 40 Tex. Jur. 157-172. As already noted, the commissioners' courts are made boards of equalization by the Constitution. Nothing would prevent the Legislature's investing such boards of equalization with power to review their own findings, if such power of review is kept within due bounds. The bill in question provides that "any previous fixing of values of such property for the years involved shall not be 'res adjudicata' as to the particular case." Our consideration will now be directed to the effect of this provision, which would deprive the valuations made by the boards of equalization of any finality whatsoever.

Article 8, Section 13, of the Constitution, as it existed before 1932, commenced "provision shall be made by the first Legislature for the speedy sale of a sufficient portion of all lands and other property for the taxes due thereon, and every year thereafter for the sale of all lands and other property, upon which the taxes have not been paid." As adopted in 1932, said Article 8, Section 13, says "Provision shall be made by the first Legislature for the speedy sale, without the necessity of a suit in court, of a sufficient portion of all lands and other property for the taxes due thereon, and every year thereafter for the sale in like manner of all lands and other property upon which the taxes have not been paid."

As already touched upon, Article 3, Section 52, provides that "any county (etc.) . . . may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total . . . shall never exceed . . ."

Article 8, Section 15, of the Constitution, says that "the annual assessment made upon landed property shall be a special lien thereon."

We have already observed that Article 8, Section 18, makes the commissioners' court a board of equalization.

We think it clear from the above quoted provisions of our Constitution that it was contemplated that there should be an assessment which should become of such definite character and finality sometime during the year as would sustain an action to collect taxes based thereon. If this provision should be valid, however, an assessment would never be final, values for taxing purposes could never be quieted. There is no limit to the time within which applications for adjustments may be filed, nor is there any limit to the number of times the board of equalization could be called upon to pass upon the value to be fixed upon a piece of land. A county attorney filing suit for taxes based on a particular assessment might find on trial day that it had been set aside and revised, or he might meet a plea in abatement on the ground that an application to reduce the valuation is pending before the commissioners' court. To all intents and purposes, we would have no board of equalization. A board of equalization can no more be a board of equalization with its findings having no finality and being res adjudicata of nothing, than could a court be a court and its judgments determine nothing.

The provision of the statute that "any previous fixing of values of such property for the years involved shall not be res

adjudicata as to the particular case" contravenes the above sections of our Constitution and is void. Furthermore, it is so interwoven with other parts of the statute as to be inextricable. Take out the void parts of this statute and nothing workable remains. It follows that the Act as a whole is unconstitutional and void.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant

OR APPROVED JUL 11, 1939

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY WRK
CHAIRMAN